**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **HOLLY HILLS FARM CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:04CV856** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION</u>**

_____This matter is before the court pursuant to 28 U.S.C. § 636(c)(1) on cross motions for

summary judgment.   Pursuant  to 5 U.S.C § 702, Plaintiff Holly Hills Farm Corp. (Holly Hills)

seeks judicial review of the final decision of the Defendant United States of America, acting

through the United States Department of Agriculture (USDA), denying Holly Hills' application

for benefits for the farm identified as "Farm 1075" (FSN 1075) under the Direct Counter-Cyclical

Program (DCP), managed by the Farm Services Agency (FSA).[1]  The USDA's final decision

consists of a finding by the Deputy Director of the National Appeals Division (NAD) that the

FSA's denial of program benefits based upon the National Resource Conservation Service

(NRCS) technical determination of wetland conversion was not erroneous.

---

[1] DCP payments provide income support to producers of eligible commodities and are based on historically-based acreage and yields and do not depend on the current production choices of the farmer.  The DCP was authorized by the Farm Security and Rural Investment Act of 2002, 7 U.S.C. § 7901 (2002) (2002 Farm Bill), for farms enrolled for the 2002 through 2007 crop years producing barley, corn, grain sorghum (including dual-purpose varieties), oats, canola, crambe, flax, mustard, rapeseed, safflower, sesame and sunflower (including oil and non-oil varieties), peanuts, rice (excluding wild rice), soybeans, upland cotton, and wheat.  Fact Sheet, United States Department of Agriculture, FSA-Administered Programs 2 (May 2005) _available at_ http://www.fsa.usda.gov/pas/publications/facts/html/fsaprograms05.htm.

**Standard of Review**

Summary judgment is only to be granted when there is no genuine dispute as to any issue of material fact when all justifiable inferences are drawn in favor of the non-moving party and the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, unsupported conclusory allegations by the non-moving party are not sufficient to create a genuine dispute of material fact so as to withstand the granting of relief.  Celotex Corp., 477 U.S. at 327 (White, J., concurring).  In essence, the court must decide if the evidence when viewed in the light most favorable to the non-moving party "presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

Judicial review of agency action is governed by § 706 of the Administrative Procedures Act (APA). 5 U S C. §§ 701-706.  Holly Hill's challenge in this case implicates the subsections of § 706 which require a reviewing court to hold unlawful and set aside agency action, findings, and conclusions found to be "in excess of the agency's statutory jurisdiction or authority, without observance of procedures required by law, or 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Shanty Town Assoc. Ltd. P'ship v. E.P.A., 843 F.2d 782, 789 (4th Cir. 1988) (quoting 5 U.S.C. § 706).  See also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-17 (1971).  The ultimate standard of review, however, is quite narrow; the court may only consider whether the agency's decision was based on a consideration of relevant factors and whether there has been a clear error of judgment, and it is not empowered to substitute its judgment for that of the agency.  Shanty Town, 843 F.2d  at 795, quoting Citizens to Preserve Overton Park. 401 U.S. at 416.  Stated simply, the court is limited to reviewing the USDA's decision to three possible grounds of error: (1) whether it exceeded its

statutory authority; (2) whether it arbitrarily and capaciously disregarded procedure required by law; or (3) whether it  abused its discretion in its substantive decision.  <u>Shanty Town</u>, 843 F.2d at 789.

<strong>Undisputed Facts and Procedural Background</strong>

Holly Hills owns a 650-acre estate in Caroline County, Virginia, and operates a farm, FSN 1075, that is registered with the USDA.  At issue here is Field 16 of FSN 1075, a small triangle of land consisting of approximately 3.4 acres, bounded on one side by a river (the Mattaponi River) and on the other by a state highway (Route 207) which includes approximately one acre that has been designated as an illegally converted wetland that rendered the farm ineligble for benefits.  On May 16, 1989, George R. Ways, District Conservationist for the Soil Conservation Service (SCS), an administrative agency of the USDA,[2] confirmed the presence of hydric soil on FSN 1075, indicating the possible presence of wetlands.[3]  (R. at 291.)   On February 7, 1990, Mr. Ways advised Holly Hills in writing to seek a determination of the wetland status of the subject area before beginning the clearing of any woodland.  (R. at 306.)  In a subsequent letter, dated March 6, 1990, Mr. Ways advised Holly Hills to cease any clearing in progress on Field 16, then designated as woodland, and suggested the Army Corp of Engineers be contacted for official wetland determination and the issuance of any permits needed for wetland conversion.  (R. at 285.)  There was no certified wetland determination for Field 16 in force at that time.  (R. at 285-87.)

---

[2] The SCS was renamed the National Resources Conservation Service (NRCS) on October 20, 1994.

[3] A wetland is defined by the presence of (1) predominately hydric soil and (2) prevalent hydrophytic vegetation and is (3) saturated by water for a frequency and duration sufficient to support that vegetation under normal circumstances.  7 C.F.R. § 12.2(a) (2003).

In June 1990, SCS notified Holly Hills that Fields 6, 9, 10 and an unnumbered area northeast of Field 11 of FSN 1075, were designated as wetlands.  (R. at 286.)  Holly Hills appealed and on January 10, 1991, George C. Norris, State Conservationist for the SCS, affirmed the wetland designations.  (R. at 322-23.)  Thereafter, in response to information requested by SCS, Mr. John F. Ames, Vice President of Holly Hills (Ames), wrote a letter, dated February 15, 1991, denying "anybody from the USDA, CSC, ASCS, or CSC" access to the property until he received, in writing, information regarding "what [SCS] needs to see, what additional information, and the reason for the request," "how this relates to the wetlands determinations and to the appeal," and "an explanation... to determine how a finding in fact can be made if [SCS needs] additional information."  (R. at 33.)  On August 23, 1991, SCS completed and certified a revised wetland determination regarding Fields 6 and 9, but did not respond to the Plaintiff's request for information.  (R. at 318-20.)

On August 3, 1995, the Environmental Protection Agency (EPA) issued an Order for Compliance, requiring Holly Hills to cease the unauthorized filling of wetlands in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), on property located "adjacent to the Mattaponi River, next to Rt. 207," and to mitigate any environmental harm caused by the filling activity and removal of vegetation from the area.  (R. at 60-61.) Again, access to the property for the EPA to investigate the violation was denied.  (R. at 57.)

On December 20, 1996, and March 3, 1997, Ames wrote a letter to NRCS regarding USDA benefits and the wetland determinations.   In two responses, one from George R. Ways, and a second from Kenneth E. Carter, NRCS informed Ames that because it received a so-called whistle-blower complaint regarding possible wetland violations on the property, and because

4

Holly Hills had denied access to the property, the agency automatically denied USDA benefits to Holly Hills according to FSA procedure.  (R. at 311-12, 317.)  NRCS also informed Ames on behalf of Holly Hills that until the whistle-blower complaint was resolved, the USDA would continue to deny benefits.  (R. at 311, 317.)  To resolve the issue, NRCS requested that access be granted to a team composed of NRCS, EPA, and Army Corps of Engineers personnel, with Ames being permitted to accompany the team, to examine the subject areas designated as wetlands by the August 1991 determination in order to verify whether the areas were properly designated and whether they had been cleared or manipulated in any way in violation of FSA policy.  (R. at 311.)  The record does not include any evidence of a response on behalf of Holly Hills.

Thereafter, for crop year 2002, Holly Hills applied for benefits under the DCP for FSN 1075, Tract 2630 (R. at 25), and in response, FSA notified Ames by letter dated November 7, 2002, that a representative from the NRCS needed to visit the farm to investigate the outstanding wetland noncompliance report and to establish a conservation plan for the farm.  (R. at 24.)  On November 11, 2002, Ames wrote to the FSA and stated that the farm had a conservation plan in place and that there was no outstanding wetland noncompliance.  (R. at 23.)  NRCS again notified Ames by letter on June 11, 2003, that because of the February 1991 letter denying NRCS staff access to the property in response to the whistle-blower complaint, Holly Hills was not eligible to participate in Farm Bill Programs.  (R. at 31.)  NRCS also notified Ames that in order to reinstate eligibility for participation in USDA programs, NRCS would have to make a wetland determination.  Id.  After requesting information about the whistle-blower complaint, Ames granted access to the property on June 19, 2003.  (R. at 21.)

On August 12, 2003, members of NRCS and the EPA visited FSN 1075 and found that

the requisite hydrophytic vegetation, wetland hydrology indicators, and hydric soils required for a wetland determination were present on Field 16. (R. at 40.) Furthermore, after a review of "before and after" aerial photography and FSA compliance slides dated 1993-2002 , the NRCS team determined that portions of Field 16 had been converted from bottomland hardwoods to pastureland in the August1994 time frame.[4] Id. Team members noted in their data form that livestock grazing and/or mowing operations prevented the re-establishment of any woody plant species on Field 16. Id. On September 5, 2003, NRCS notified Ames via certified letter of its determination that one acre of Field 16 was converted wetland and that FSN 1075 was therefore ineligible for USDA programs until measures were undertaken to restore the wetland. (R. at 46-47.) In the letter, NRCS also notified Ames that the determination would become final in thirty days, or on October 8, 2003, unless a field visit was requested to review the basis for the preliminary technical determination. Id. On September 15, 2003, Ames responded to NRCS's preliminary technical determination, but he did not request a field visit. (R. at 18-19.)

On November 3, 2003, Holly Hills appealed the converted wetland determination to the Hanover/Caroline FSA County Committee. (R. at 15-16.) On December 19, 2003, the FSA County Committee held a hearing in order to review the final technical determination. (R. at 10-12.) On January 7, 2004, the FSA County Committee notified Holly Hills that its case warranted a review by the NRCS State Conservationist and the matter was thereafter referred to NRCS. (R. at 8.) On January 20, 2004, the State Conservationist reviewed the appeal and held that the

---

[4] Federal Regulations provide that a person or corporation shall be ineligible for all or a portion of USDA program benefits if "[a]fter November 28, 1990, the person converts a wetland by draining, dredging, filling, leveling, *removing woody vegetation*, or other means for  the purpose, or to have the effect, of making the production of an agricultural commodity possible." 7 C.F.R. § 12.4(a)(3) (2003) (emphasis added).

converted wetland determination was technically accurate and final.  (R. at 7.)  NRCS notified

Holly Hills of the State Conservationist's decision on March 12, 2004, and advised Holly Hills

that it was not eligible for USDA program benefits until the subject wetland was restored.  (R. at

5.)

Holly Hills appealed FSA's adverse decision to the National Appeals Division (NAD) of

the USDA on April 9, 2004.  (R. at 126.)  It also requested the issuance of subpoenas for several

employees of NRCS and the EPA to attend and testify at the ensuing hearing, but the NAD

Hearing Officer assigned to the case, after notifying NRCS of the request, declined the issuance

of the subpoenas on the basis that the requested witnesses did not possess specific relevant

information that was not otherwise available from witnesses who were scheduled to attend the

hearing. (R. at 90-102.)  NAD held the hearing June 23, 2004, and the NAD Hearing Officer

issued his decision on July 22, 2004.  (R. at 137-40.)    In his decision, the Hearing Officer

concluded that the FSA's denial of program benefits based on the NRCS technical determination

of wetland conversion after November 28, 1990, was not erroneous. (R. at 139.)

On August 13, 2004, Holly Hills filed a request for Director Review of the NAD Hearing

Officer's determination.  (R. at 333.)  The NAD Deputy Director upheld the Hearing Officer's

determination on October 21, 2004, constituting  final agency action. (R. at 332.)  Holly Hills

thereafter filed the instant complaint with this court, appealing USDA's decision.  Specifically,

Holly Hills asserts that the agency's decision is not factually correct, that the USDA abused its

discretion in denying the program benefits, and that the agency's final decision is unreasonable,

arbitrary, and capricious.  (Compl.).

**Analysis**

Agency actions made reviewable by statute and final agency action for which there is no other adequate judicial remedy in a court are subject to judicial review.  5 U.S.C. § 704 (2004 Supp.).  The USDA's decision on October 21, 2004, constituted a final agency action and where there is no further administrative forum available, the action involving a suit against the United States concerning land located within the court's district  is within the court's jurisdiction and venue.

In this matter, Plaintiff does not argue that the USDA did not have the authority to deny program benefits on the basis of their determination that Field 16 contains a converted wetland.  Instead, Plaintiff contends that the NAD committed serious procedural errors in reaching its decision and that the USDA's final decision was arbitrary, capricious, and otherwise unreasonable.  (Pl.'s Mot. for Summ. J. at 3) (Pl.'s Mot.).

**Procedural Issues**

In an appeal of an FSA adverse decision hearing, the appellant bears the burden of establishing that the agency's adverse decision is erroneous by the standard of a preponderance of the evidence.  7 C.F.R. § 11.8(e).  Holly Hills asserts it was prevented from sustaining its burden of proof in challenging the agency's action because of the USDA's abuse of discretion in how the administrative hearing was conducted.  Specifically, Plaintiff argues that the NAD Hearing Officer's denial of the request for witness subpoenas, evidence, documents, as well as access to USDA personnel; the Hearing Officer's engaging in *ex parte* communication in violation of 7 C.F.R. § 11.7; and the allegedly improper leading of witnesses at the hearing by the Officer, constituted arbitrary and capricious action sufficient to void the process.  (Pl.'s Mot.  at 2-3.)

The Defendant responds that before judicial review, Holly Hills' claim was reviewed no less than five times at the administrative level during which process the technical determination that is the basis of the final agency decision was repeatedly reviewed and found to be without

error.  As such, the Defendant argues that there was no abuse of discretion in the process.  (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof  at 9-10) (Def's Mot.).  Defendant otherwise denies that it improperly refused the right of Holly Hills to present witnesses or evidence at the hearing, or that the Hearing Officer otherwise acted improperly in any respect.  Id.

***Denial of ability to present witnesses, evidence, and documents.***

Holly Hills contends that Defendant denied it the ability to present witnesses, evidence, and documents in a manner necessary to challenge the FSA's decision.  (Pl.'s Mem. in Supp. at 3) (Pl.'s Mem.).  Defendant responds that the Hearing Officer was well within his discretion when he confined the evidence presented at the hearing to what he determined was relevant and concluded that the evidence presented at the FSA Committee and NAD levels provided a sufficient basis to reach a decision in the matter.  (Def.'s Mot. at 11.)

The NAD Hearing Officer denied Holly Hills' request to issue subpoenas at the Division Hearing presumably because he was also provided with a written record of all the relevant information supporting NRCS's technical determination and the FSA's resultant denial of benefits, as well as a record of the FSA Committee meeting where many of the requested witnesses were in attendance and were examined.  The applicable regulations state that the Hearing Officer may, within his discretion, "confine the presentation of facts and evidence to pertinent matters and exclude irrelevant, immaterial, or unduly repetitious evidence, information, or questions."  7 C.F.R. § 11.8(c)(5)(ii).  Moreover, the pertinent regulations mandate that document subpoenas are to be issued only if the appellant "has established that the production of documentary evidence is necessary and is reasonably calculated to lead to information which would affect the final determination or is necessary to fully present the case before the Division."  7 C.F.R. § 11.8(a)(2)(iii)(A).  In any event, although instructed to do so by the Hearing Officer in a letter dated May 12, 2003,  Holly Hills failed to identify the specific documents that were the subject of the request for production; failed to provide detailed explanations of how the contents of those documents would be relevant to the proceedings rather than just a duplication of other

9

testimony and evidence otherwise available; and failed to confirm that documents were unavailable by other means.  Therefore, denial of the request for production based on a finding that the requested witnesses and documents would be irrelevant, immaterial, or unduly repetitious was a reasonable finding and did not constitute an abuse of discretion.

Finally, at the Division Hearing,  Holly Hills bore the burden of proving that the Defendant's determination that Field 16 contained a wetland that had been unlawfully converted was erroneous by a preponderance of the evidence. 7 C.F.R. § 11.8(e).  Holly Hills, however, did not present any documentation or witnesses who could testify to the fact that the clearing of Field 16 occurred only prior to the effective date of the controlling regulations of November 28, 1990, that clearing did not take place after that date, or that Field 16 did not, in fact, contain wetland. Presumably, if Holly Hills had farmed the land since 1985 (which is not contested), witnesses and documentation would be available to refute the Defendant's evidence and the final determination that a conversion of the wetland contained within Field 16 had occurred after November of 1990.[5]  Because Holly Hills' burden was not met, the Hearing Officer's decision to uphold the technical determination was reasonable and not arbitrary or capricious.

### Denial of witness subpoenas.

_____The applicable regulations state that a Hearing Officer shall issue subpoenas for witnesses only if the requesting party has established that:

> either a representative of the Department or a private individual possesses information that is pertinent and necessary for disclosure of all relevant facts which could impact the final determination, *that the information cannot be obtained except through testimony of the person*, and the testimony cannot be obtained absent issuance of a subpoena.

7 C.F.R. § 11.8(2)(iii)(B) (emphasis added).  The Hearing Officer determined that because Jack

---

[5]In fact, Ames seemed reluctant to discuss the clearing of Field 16, including the existence of a pile of stumps and debris observed by the NRCS team.  (R. at 183-86.)

Huber, Agricultural Program Specialist for the FSA, Daniel Solomon, Resource Conservationist for NRCS, and Jerry Quesenberry, NRCS Soil Scientist and Wetland Team Leader for the USDA, would be present at the hearing, the information sought by Holly Hills by subpoena could be obtained from the testimony of those individuals as well as from documents that would be part of the record that also contained the findings and opinions of the requested witnesses.  Holly Hills argues that several of the requested witnesses, and most notably George Ways, had exclusive information relating to the matter.  (Pl.'s Rebuttal Br. at 1-2.)  Defendant responds that the requested witnesses' opinions were contained in recorded documents offered as evidence at the hearing and that the opinions or thought processes of officials who were not the final decision makers were irrelevant to the central issue of the case in any event.  (Def.'s Mot. at 11.)

The individuals Holly Hills sought to subpoena may have possessed relevant information concerning the technical determination that Field 16 contained a converted wetland.  However, such a possibility was not sufficient to require the attendance of those witnesses because the technical determination was not based on their thought processes or opinions, but instead on their notes and final reports that were part of  the record.  Thus, there is no basis for the assertion that the requested witnesses possessed relevant knowledge not otherwise available, and even if they did, "inquiry into the mental processes of administrative decisionmakers is usually to be avoided." Citizens to Preserve Overton Park, 401 U.S. at 155.   Further, although two of the three witnesses at the hearing lacked any first-hand knowledge of the property from having visited it, that does not, in and of itself, require that those individuals who had visited the property be made available.  In fact, the witnesses present at the hearing were able to testify about the determination and underlying record as supervisors and team members.  Finally, Mr.

11

Quesenberry, who had visited the property and who was present at the Committee Meeting, was the one who had made the final technical determination of converted wetland status in 2003 as Wetland Team Leader and his evidence that was subject to examination at the Committee Meeting by Holly Hills was part of the record.  (R. at 476.)  Finally, it must be noted that the court may not question an agency officer's thought process or ability to control agency proceedings as long as the officer is acting within the limits of his designated authority, nor may the court substitute its own judgment for that of the agency.

*Ex parte communication.*

Holly Hills contends that the Hearing Officer engaged in inappropriate *ex parte* communications with FSA when it notified the FSA of Plaintiff's requests for subpoenas  and when the FSA responded to the request.  (Pl.'s Mot. at 6.)  The applicable regulations state:

> At no time between the filing of an appeal and the issuance of a final determination under this part shall any officer or employee of the Division engage in *ex parte* communications *regarding the merits of the appeal* with any person having any interest in the appeal pending before the Division, including any person in an advocacy or investigative capacity.

7 C.F.R. § 11.7(a)(1) (emphasis added).  However, the regulation also emphasizes that the prohibition does not apply to discussions of *procedural matters* that may relate to an appeal. 7 C.F.R. § 11.7(a)(1)(I).  The exchange at issue here provided the Hearing Officer with the information necessary to determine if  the subpoenas should have been issued in accordance with 7 C.F.R. 11.8(a)(2)(iii)(B).  It was clearly an exchange regarding a procedural matter and there is no evidence that the Hearing Officer and the representatives of FSA engaged in any discussion about the merits of the appeal.  Accordingly, there was no abuse of discretion in his denial of the requests for subpoenas.

***Improper actions during hearing.***

Holly Hills also contends that the NAD Hearing Officer's actions during the hearing constituted a violation of basic hearing procedures.  Specifically, it is asserted that the Hearing Officer improperly led the agency through the Hearing, and, in effect, orchestrated the testimony of the agency witnesses who testified.  (Plaintiff's Mot. at 5-6.)

The applicable regulations state: "The hearing will be conducted by the Hearing Officer in the manner determined by the Division most likely to obtain the facts relevant to the matter or matters at issue."  7 C.F.R. § 11.8(a)(5)(ii).  Holly Hills alleges that the Hearing Officer "orchestrated and conducted the government's case and interfered with the Plaintiff's right of cross examination including, but not limited to, asking the Plaintiff's representative why he was asking the question, adding his own comments and acknowledging that since the government did not have a lawyer present that he was in essence assisting the government."  (Pl.'s Reply Br. at 4).  It is apparent, however, from a review of the hearing transcript and record that the Hearing Officer did not act as counsel for the Defendant, but merely attempted to marshal and distill the applicable evidence and to ensure that pertinent issues were addressed.   It is correct that the Hearing Officer questioned Holly Hills' representative and interrupted him during cross-examination of witnesses, but in an attempt to re-direct the focus of the hearing on pertinent issues.  (R. at 446, 451, 453.)  It is not correct to conclude that he led the witnesses through, or orchestrated their testimony; rather, he attempted to extract necessary information upon which their conclusions were based.  (R. at 461-62.)  In any event, the Hearing Officer's attempt to clarify questions and answers, and to obtain all the applicable evidence, did not evidence a improper bias or prejudice toward the Defendant..

13

**Substantive Issues**

The USDA's final agency action was a finding that the FSA properly ratified the NRCS technical determination that Field 16 contained an illegally converted wetland so as to justify a denial of USDA program benefits.  Holly Hills argues that: (1) Field 16 does not contain a converted wetland and that it is in its natural state; and (2) if Field 16 is not in its natural state, that any conversion took place prior to November 28, 1990.  (R. at 540.)  Therefore, Holly Hills argues that the USDA's final decision to deny program benefits based on its determination that Field 16's converted wetland status was arbitrary and capricious.  (Pl.'s Mot. at 5.)  In making the determination that an agency's decision was arbitrary and capricious, or not in accordance with the law, the court must consider the process and the relevant factors that support the agency's decision to determine whether there was a clear error of judgment.  Shanty Town, 843 F.2d at 794.

Here, the Defendant denied USDA program benefits for two reasons: first, the initial denial was an automatic decision resulting from Ames' 1991 letter barring access to the property and the second finding was the result of the 2003 final technical determination that Field 16 contained illegally converted wetland.  Ultimately, the issue is whether the determination of Field 16 as being an illegally converted wetland under 7 C.F.R. § 12.32 can be justified on the basis that it occurred after November 28, 1990.  Holly Hills maintains that Field 16 is in its natural state as supported by NRCS documents stating that normal circumstances existed at the site, that the site had not been significantly disturbed, and that the site was not a potential problem area. (R. at 40.)  Holly Hills also cites Mr. Ways' testimony at the December 2003 FSA Committee Hearing that while on the property, he did not observe any evidence of draining, drainage, filling,

ditching, levies, dikes, soil relocation, land leveling, road construction, dam construction, or stumps from tree removal. (Pl.'s Mot. at 2-4; R. at 169-70.)

However, an NRCS team consisting of an engineer, a soil scientist, and a biologist made the wetland determination for Field 16 on August 12, 2003, based upon the three requisite wetland characteristics: presence of wetland hydrology indicators; predominance of hydric soils; and hydrophytic vegetation that is adapted for life in saturated soil conditions. (R. at 40-41.) Furthermore, after a review of relevant "before and after" aerial photography and FSA compliance slides dated 1993-2002 , the NRCS team determined that portions of Field 16 were converted from bottomland hardwoods to pastureland in the August 1994 time frame. Id. Holly Hills argued at the hearing that the aerial photographs were unreliable and that there was no evidence of any clearing taking place after 1990. (R. at 537.)  That, however, was an issue for the factfinder and the Hearing Officer determined that, according to NRCS testimony, aerial photographs, and topographic map evidence, Field 16 contained a wetland with the conversion occurring after November 28, 1990.  Holly Hills also argues here, as at the hearing, that any clearing taking place on Field 16 was a result of the Defendant's guidance, supported by statements made by Mr. Ways in correspondence dated February 7, 1990.  (Pl.'s Mot. at 4.) However, Holly Hills was also advised in the letter to seek a formal determination of Field 16 *before* any clearing, and therefore the argument is unavailing.  Moreover, property owners are expected to know the applicable law and they may not rely on the conduct of government agents that they know to be contrary to the law.  *See* Heckler v. Cmty. Health Serv. of Crawford County, 467 U.S. 51, 63 (1984).

The regulations specify that a person shall be ineligible for all or a portion of FSA

program benefits if, after November 28, 1990, the person converts a wetland without proper authority by removing woody vegetation for the purpose of, or making possible, the production of an agricultural commodity.  7 C.F.R. § 12.4(a)(3).  Since the evidence in the record as found by the proper agency authority establishes that Field 16 of FSN 1075 was converted from bottomland hardwood to pastureland after November 28, 1990, without the requisite authority, FSN 1075 was ineligible for benefits under the DCP.  Therefore, there is substantial evidence in the record that supports the agency's determination and the final agency action was not arbitrary, capricious, or otherwise invalid as the result of an abuse of discretion.

### Conclusion

There is no evidence from the record of any impropriety during the appeals process as alleged and the agency's decision was supported by substantial evidence.  Therefore, the agency's decision was reasonable, not arbitrary or capricious, and did not result from any abuse of discretion.  The Defendant's Motion for Summary Judgement must therefore be granted, and the case dismissed.

An appropriate order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated:_____
Richmond, Virginia

16